IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRENDA MARIE MAZZA; | |
| Plaintiff, | **8:23CV466** |
| vs. | **FINDINGS & RECOMMENDATIONS** |
| MICHELLE KING; | |
| Defendant. | |

Plaintiff Brenda Mazza seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final administrative decision of Michelle King,[1] Acting Commissioner of the Social Security Administration ("Commissioner"). Now pending before the Court is Mazza's Motion for an Order Reversing the Commissioner's Decision, Filing No. 14, and the Commissioner's Motion to Affirm her Decision. Filing No. 19. For the reasons discussed herein, the undersigned recommends the Court grant Mazza's motion, deny the Commissioner's motion, and reverse and remand for further administrative proceedings.

**PROCEDURAL HISTORY**

On May 25, 2021, Mazza filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 19, 2021. Filing No. 8-5 at 2. The claim was initially denied on December 22, 2021, Filing No. 8-3 at 2, and upon reconsideration on October 7, 2022. Filing No. 8-3 at 11.

---

[1] Michelle King is the current Commissioner and is automatically substituted as a party for Carolyn Colvin. *See* Filing No. 30 at 1 n.1; Fed. R. Civ. P. 25(d) (public "officer's successor is automatically substituted as a party"); 42 U.S.C. § 450(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security . . . .").

1

Mazza requested a hearing before an Administrative Law Judge ("ALJ"). Mazza and her counsel appeared for a hearing on February 10, 2023. Filing No. 8-2 at 32. At this hearing, Mazza amended the alleged disability onset date to February 14, 2022. Filing No. 8-2 at 37, 39. The ALJ issued a decision denying Mazza's applications on March 10, 2023. Filing No. 8-2 at 11–21. On September 8, 2023, the Appeals Council denied Mazza's request for review. Filing No. 8-2 at 2-4. Accordingly, the ALJ's decision stands as the Commissioner's final decision. See Kraus v. Saul, 988 F.3d 1019, 1023 (8th Cir. 2021).

## BACKGROUND

Mazza challenges the ALJ's RFC determination. Specifically, she argues the ALJ erred in determining she retains the residual functional capacity ("RFC") to perform medium work. Mazza also argues the ALJ erred in allegedly failing to adequately evaluate the supportability and consistency of certain medical opinions pursuant to 20 C.F.R. § 404.1520c. Finally, Mazza argues the Court should apply a new federal regulation when reviewing the ALJ's Step 4 conclusion and asserts arguments she concedes are harmless error at Step 5.

### September 2020 to May 2021: *Complaints of Dizziness*.

On September 22, 2020, Mazza was seen for complaints of dizziness. Filing No. 9-2 at 2–3. The physical exam showed nystagmus in both eyes. Filing No. 9-2 at 3. The provider referred Mazza to physical therapy to treat her vertigo. Filing No. 9-2 at 4. During an initial vestibular evaluation for physical therapy on September 23, 2020, Mazza reported she is dizzy every day. Filing No. 9-1 at 4. She also reported she suffers from a loud and constant ringing in her ears, which she first noticed in 2009 and that was getting worse. Id. Finally, she reported she struggles with hearing and "her [doctors] have recommended hearing aids but she refuses." Id.

On November 5, 2020, Mazza reported to a telehealth appointment. Filing No. 9-1 at 19–20. Her review of systems during this appointment was positive for headaches but negative for dizziness. Filing No. 9-1 at 20. Her physical exam showed normal hearing in both ears. Id.

On May 14, 2021, Mazza reported to a preoperative consultation for a laparoscopic cholecystectomy (gallbladder removal). Filing No. 9-1 at 22. Her review of systems was negative for ear pain, back pain, gait problems, and dizziness. Filing No. 9-1 at 25–26.

**May 25, 2021: *Social Security Application.***

On May 25, 2021, Mazza filed her social security application. She initially alleged disability beginning May 19, 2021 but later amended her alleged onset date to February 14, 2022 at the ALJ hearing.

**November 4, 2021: *Consultative Examination by Dr. Pilley.***

On November 4, 2021, Mazza reported to Dr. Mark Pilley for a consultative exam ordered by the Commissioner. Dr. Pilley noted Mazza entered his office "ambulating with a slow, unbalanced gait requiring her to touch the wall to ambulate without falling." Filing No. 9-1 at 161. He noted difficulty ambulating and moving around his office and the examination room. Id. He noted she was not using an assistance device to walk but could benefit from the use of such. Id. Dr. Pilley noted Mazza did not demonstrate issues hearing him within ten feet. Filing No. 9-1 at 164.

During the examination, Mazza did not complain of pain and tenderness with the hands-on inspection but did demonstrate slight limitations in range of motion in the cervical–thoracic–lumbar spine. Filing No. 9-1 at 164. Mazza did not display any "evasive action" when Dr. Pilley was examining her lower back. Id. Dr. Pilley noted Mazza was unable to kneel and stoop. Id. Dr. Pilley indicated the presence of 4 out of 5 Waddell signs and rendered Mazza's exam "questionably reliable." Filing No. 9-1 at 165.

Dr. Pilley noted an x-ray of Mazza's lumbar sacral spine indicated degenerative disc disease throughout the lumbar sacral spine, lateral lipping, osteoarthritic changes in both hips, SI joints with inflammatory changes, decreased disc space at L2-S1, and spondylolisthesis at L4-L5. Filing No. 9-1 at 166. He also noted Mazza suffered a prior herniation of cervical discs C6-7. Filing No. 9-1 at 160.

Dr. Pilley opined Mazza is at an increased fall risk, is limited in her carrying capacity, and would have difficulty working around moving vehicles, performing job duties that are not on level ground, and walking up and down steps. He also opined she should

not climb up ladders or work at a height above ground. Finally, he opined she does not appear to have difficulties with memory and concentration and her complaints do not interfere with mobility related activities of daily living such as bathing, toileting, and ambulation. Filing No. 9-1 at 167–68.

**November 10, 2021**: *Consultative Examination by Dr. Sherrerd.*

Dr. Paul Sherrerd performed a consultative hearing examination of Mazza on November 10, 2021. Filing No. 9-1 at 175. He indicated Mazza's gait was "well coordinated" and that Mazza "rarely or never misunderst[ood] words" in conversational speech. Filing No. 9-1 at 175–76. Dr. Sherrerd's assessment noted bilateral tinnitus and bilateral sensorineural hearing loss and he recommended a hearing aid for both ears. Filing No. 9-1 at 176.

**November–December 2021**: *Medical Appointments.*

On November 29, 2021, Mazza reported to an appointment with her primary care provider, Dr. Pranith Surabhi, complaining of back pain, tinnitus, dizziness, and numbness. Filing No. 9-2 at 20–21. Dr. Surabhi noted another medical provider had referred Mazza to neurology. Filing No. 9-2 at 24.

On November 30, 2021, Mazza reported to her neurology appointment. At this appointment, Mazza indicated she had experienced lightheadedness and dizziness monthly for five years, with the episodes lasting from a week to two weeks. She noted the dizziness occurs when she bends down and comes up or lays down. Filing No. 9-1 at 177. Mazza also complained of ringing in her ears since 2009 that has gotten worse and reported experiencing low back pain for five to six years. Filing No. 9-1 at 177–78. The provider cited a 2013 MRI showing a large left-sided disc extrusion at the C6-7 level. Filing No. 9-1 at 181. The neurologist referred Mazza for an updated MRI. Filing No. 9-1 at 181–82.

Mazza's December 10, 2021 MRI of the lumbar spine indicated a central disc protrusion at L5-S1, multilevel lumbar disc and facet degenerative changes resulting in a moderate degree of bilateral neural foraminal stenosis at the L5-S1 level, and no significant evidence of spinal canal stenosis. Filing No. 9-1 at 230.

4

**December 20, 2021**: *State Agency Medical Consultant Opinion of Dr. Wheeler.*

On December 20, 2021, the state agency medical consultant, Dr. Joanell Wheeler, reviewed Mazza's claim and opined she retained the RFC to perform light work. Filing No. 8-3 at 4. In doing so, Dr. Wheeler discounted Mazza's subjective complaints as only partially consistent. Filing No. 8-3 at 5. Specifically, she noted the objective evidence pertaining to her gait was inconsistent, that Mazza declined the use of hearing aids as a solution for the ringing in her ears and hearing loss, and that Dr. Pilley noted the presence of 4 out of 5 Waddell signs during the consultative exam. *Id.*

**January 2022**: *Back Pain.*

Imaging of Mazza's back was reviewed at a January 10, 2022 appointment. The x-rays showed "no acute complications are present" regarding the cervical spine. Regarding the lumbosacral spine, the imaging indicated "intact lumbar lordosis from L2-S1, disc height loss at L4-L5 as well as L5-S1" and no anterolisthesis or coronal plane imbalance. Filing No. 9-1 at 219. At this appointment, it is notable the record indicates Mazza advised she performed physical therapy for dizziness which was "helpful." Filing No. 9-1 at 216. Mazza was also noted to be "able to move around the exam room as requested" and that her gait was "coordinated, non-antalgic, normal cadence." Filing No. 9-1 at 217.

On January 18, 2022, Mazza presented, via Zoom, with back pain which began about one day prior. Filing No. 9-2 at 26. At this appointment, Mazza was able to demonstrate normal range of motion of her back and the records note her gait was normal. Filing No. 9-2 at 28. She presented on January 24, 2022 to follow-up with lower back pain on her left side. Filing No. 9-2 at 30.

**January 27, 2022**: *Medical Opinion of Dr. Bailey.*

Mazza attended physical therapy from January 27, 2022 to February 17, 2022 for back pain. On January 31, 2022, Dr. Travis Lee Bailey signed off on Mazza's initial assessment for physical therapy, dated January 27, 2022. This assessment notes Mazza is limited in lifting from the floor, lifting overhead, overhead tasks, sitting for more than thirty minutes, squatting and standing for more than thirty minutes and walking. Filing No.

9-1 at 206. These limitations appeared to be related to Mazza's self-reported complaints. *Id.* Specifically, Mazza reported experiencing low back pain for several years that worsened in November 2021 and that she had been unable to work for the past three weeks due to her back pain. *Id.* In her medical history, Mazza self-reported ringing in her ears and chronic pain for more than twelve months as well as degenerative joint disease of the spine. Filing No. 9-1 at 204–05.

**February 17, 2022**: *Medical Opinion of Physical Therapist Derek Learch.*

When Mazza was discharged from physical therapy on February 17, 2022, physical therapist Derek Learch noted Mazza's primary complaint was "low back pain and signif[icant] difficulty with ADLs and work activities." Filing No. 9-1 at 195. He also noted Mazza was "unable to be reassessed due to non-attendance." Filing No. 9-1 at 196.

**February–September 2022**: *Back Pain and Steroid Injections.*

A February 14, 2022 EMG and nerve conduction study was abnormal, indicating "mid, chronic appearing, Left C7 Radiculopathy without active potentials and with some polyphasic potentials." Filing No. 9-1 at 234. Mazza then obtained epidural steroid injections at L5-S1 on March 3, 2022. Filing No. 9-1 at 222. Mazza reported 40% immediate relief from this procedure. Filing No. 9-1 at 224. During a March 17, 2022 follow-up appointment, the provider opined the improvement from the injections might indicate an impingement of the left L5 nerve root. Filing No. 9-1 at 228. At this appointment, the provider also noted her EMG demonstrated chronic C7 nerve irritation and no significant lumbar radiculopathy. *Id.* The provider also noted Mazza's gait is "coordinated, non-antalgic, normal cadence." Filing No. 9-1 at 226.

At a March 9, 2022 appointment, Mazza indicated her current exercise was to walk her dogs a half mile three times per week. Filing No. 9-2 at 138. On April 20, 2022 Mazza presented with lower back pain and bilateral tinnitus. Filing No. 9-2 at 34. She was negative for gait problems at this appointment. Filing No. 9-2 at 35. On May 16, 2022 it is again noted that Mazza walks her dogs three times per week for exercise. Filing No. 9-2 at 153. She also indicated her daughter was graduating high school and she was planning her graduation party. *Id.*

On July 8, 2022, Mazza presented with back pain. Her gait was noted as normal again at this appointment. Filing No. 9-2 at 52. On July 28, 2022, she presented for another steroid injection. Filing No. 9-1 at 342. She reported experiencing 20% relief immediately and 80–100% relief by her follow-up appointment on August 11, 2022. Filing No. 9-1 at 338, 343. During this August follow-up appointment, Mazza indicated her current pain is a 2/10 with the best pain in the last week being a 1/10 and the worst being a 9/10. Filing No. 9-1 at 337. The review of systems notes "no difficulty with balance." Filing No. 9-1 at 338. It is also noted she "is able to move around the exam room as requested" and that her gait is "coordinated, non-antalgic, normal cadence." Filing No. 9-1 at 339. She presented with back pain again on September 9, 2022. Filing No. 9-2 at 57–58.

**October 6, 2022:** *State Agency Medical Consultant Opinion of Dr. Suslow-Geditz.*

On October 6, 2022, another state agency medical consultant, Dr. Alexandra Suslow-Geditz reviewed Mazza's claim at the reconsideration level. Dr. Suslow-Geditz opined Mazza "appear[ed] capable of at least light exertion work as outlined in the RFC." Filing No. 8-3 at 14. Dr. Suslow-Geditz discounted Mazza's subjective complaints as "partially consistent" because her impairments had "improved with treatment and [were] not significantly limiting." Filing No. 8-3 at 15. She also noted light exertional limitations were appropriate "due to obesity, intermittent episodes of dizziness that appear to have improved and back pain that is well managed with epidural injections as needed." *Id.*

**November–December 2022:** *Physical Therapy for Dizziness.*

On November 8, 2022, Mazza was referred to physical therapy for dizziness. Filing No. 9-2 at 128. During the initial evaluation for physical therapy on November 10, 2022, Mazza complained of symptoms since October 7, 2022 and indicated she felt symptoms again on October 14, 2022. Filing No. 9-2 at 101. These symptoms included imbalance, dizziness, and losing hearing with ringing worse on the right side. *Id.* She indicated she completed physical therapy in 2020 and it helped. *Id.*

Mazza's oculomotor assessment at this physical therapy appointment was negative for nystagmus, Dix Hallpike and roll test, but positive for dizziness and imbalance on the head repetition test. Filing No. 9-2 at 102. She was positive for some corrective

saccades to each side for head impulse test. *Id.* Her gait was noted to be slow with a wide base but no assistive device and independent. *Id.* Mazza was sensitive to head motion and had very poor vestibular ocular and spinal reflexes. Filing No. 9-2 at 103. The records indicated this was substantiated by poor dynamic visual acuity ("DVA"). *Id.* The physical therapist found her presentation consistent with vestibular hypofunction between Meniere's attacks. *Id.*

Mazza performed physical therapy through December 14, 2022 and progressed. Filing No. 9-2 at 106–21. During these appointments, it was noted, on November 15, 2022 she had gait deviations as "slow with a wide base but no assistive device and independent." Filing No. 9-2 at 106. At her November 28, 2022 physical therapy appointment she "felt better today" and had her "shortest episode" on Thanksgiving. Filing No. 9-2 at 114. It is noted that, at this appointment, this was the best she had done with the increased vestibular ocular reflex ("VOR") speed and that physical therapy likely could not stop episodes from occurring. Filing No. 9-2 at 114. On December 2, 2022 she indicated she "felt better" and had not had any episodes since Thanksgiving. Filing No. 9-2 at 115. At her final physical therapy appointment on December 14, 2022, Mazza indicated she was "pleased that her friends can really tell her balance is better." Filing No. 9-2 at 119. It was noted that though she continues to struggle with VOR, her DVA had improved a lot. Filing No. 9-2 at 121. These records indicated she had "great progress," but hopefully she can get her medication to work better to get ear pressure relief. *Id.* She was encouraged to reassess in February or March 2023 as to whether she should return. *Id.*

**December 5, 2022**: *Audiogram.*

Mazza completed an audiogram on December 5, 2022 which revealed low frequency hearing loss on the right. Filing 9-2 at 160. This was noted as consistent with Meniere's disease. *Id.*

**February 3, 2023**: *Medical Opinion of Dr. Surabhi.*

At Mazza's counsel's request, Dr. Surabhi provided a February 3, 2023 medical opinion in which he diagnosed Mazza with dizziness and Meniere's disease. Filing No. 9-2 at 165–69. Dr. Surabhi opined these impairments can be expected to last at least twelve

months. He further opined Mazza could: walk one city block without rest/severe pain; sit two hours at one time; stand five minutes without needing to sit down; and sit and stand/walk for less than two hours in an eight-hour workday. Filing No. 9-2 at 166. Dr. Surabhi opined Mazza would need to take unscheduled breaks due to her dizziness every fifteen minutes and that he could not estimate how long of a break she would need. *Id.* He indicated Mazza would need an assistive device for standing due to her imbalance and dizziness and that she: can lift less than ten pounds; cannot twist, stoop, crouch, climb stairs or ladders; has significant issues reaching, handling, and fingering; would be off task 25% of the day; and would be incapable of even low stress work due to dizziness. Filing No. 9-2 at 167–68.

**February 2023**: *Appeal and Hearing Before ALJ.*

During the February 10, 2023 hearing, Mazza amended her disability onset date to February 14, 2022. Filing No. 8-2 at 39. Mazza came to the hearing with a cane, which she advised she had been using for "about a week" at the suggestion of her doctor due to her dizziness. Filing No. 8-2 at 43, 54. Prior to the cane, she testified she would "make sure [she] ha[d] help or walls with her" to help with her balance issues. Filing No. 8-2 at 54.

She testified she has experienced dizziness daily for a year and experiences vertigo "a couple times a month." Filing No. 8-2 at 43. Regarding the vertigo (which she also refers to as a Meniere's attack[2]), outside of an October 2022 hospital stay, when the vertigo lasted a "whole day and evening," she testified the vertigo typically lasts five or ten minutes. Filing No. 8-2 at 44. With the vertigo, Mazza testified she experiences nausea, vomiting, and diarrhea. Filing No. 8-2 at 55–56.

Mazza also testified regarding her back issues, advising she cannot stand in one spot for more than five minutes without "tremendous pain" in her lower back which radiates down her left leg. Filing No. 8-2 at 45, 51. She testified she has experienced back pain of this severity for "a couple of years" and experiences it daily if she is "up and doing stuff." Filing No. 8-2 at 45–46. She advised she has had injections for her back pain that

---

[2] Filing No. 8-2 at 48.

help for approximately two months, making her back pain "not as severe." Filing No. 8-2 at 46. She advised bariatric surgery may help her health, but it is not covered by insurance. Filing No. 8-2 at 47.

Finally, Mazza testified regarding her alleged hearing loss. She advised she does not and has never used hearing aids because she cannot afford them. Filing No. 8-2 at 42–43. She also testified she has a "tremendous ringing" in her right ear which causes issues with concentration. Filing No. 8-2 at 55.

Mazza testified she can sit in a work chair for "probably 30 minutes" and that she could "probably" lift a gallon of milk and carry it a very short distance. Filing No. 8-2 at 52. She advised reaching overhead, turning her head, lifting her head, or looking down makes her very dizzy. Filing No. 8-2 at 53–54. She testified she needs to lay down probably three times a week for several hours due to her dizziness. Filing No. 8-2 at 54–55. She testified she walked her dogs three times a day "over the summer" but stopped due to her dizziness and the cold, advising her dizziness is worse in the winter. Filing No. 8-2 at 49.

Mazza described her most recent work as a school kitchen help and manager at the hearing, testifying her job duties included unloading "extremely heavy" boxes, standing in one spot cutting vegetables, preparing food, pulling heavy pans from areas above her head, and performing "a little bit" of written paperwork. Filing No. 8-2 at 40. She advised she would have to lift or carry more than 20 pounds and occasionally more than 50 pounds. Filing No. 8-2 at 41.

At the hearing, Mazza's counsel indicated Mazza had a diary regarding her dizziness which she would submit after the hearing. This was submitted and has a beginning date of October 2022 and an end date of the day before the hearing. Filing No. 8-6 at 96–106.

**March 10, 2023:** *ALJ Written Opinion.*

On March 10, 2023, the ALJ issued his written opinion denying Mazza's application using the five-step disability evaluation analysis in the Social Security regulations. Filing No. 8-2 at 11–21. The ALJ first found (Step 1) that Mazza had not engaged in substantial gainful activity since February 14, 2022 (the alleged onset date as amended at the

10

hearing) and then found (Step 2) that Mazza suffers from the following medically determinable severe impairments: Meniere's disease, degenerative disc disease, sensorineural hearing loss, and obesity. Filing No. 8-2 at 13–14. At Step 3, the ALJ found that Mazza's impairment or combination of impairments was not severe enough to equal the severity of the impairments listed in the regulations. Filing No. 8-2 at 14.

The ALJ then found Mazza retains the RFC to perform medium work with the following additional limitations: she cannot climb ladders, ropes, and scaffolds; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she can tolerate a moderate noise intensity level; she can tolerate frequent exposure to extreme cold and extreme heat, but no exposure to moving mechanical parts or unprotected heights; and she cannot operate a motor vehicle. Filing No. 8-2 at 14–15. When determining Mazza's RFC, the ALJ noted skepticism regarding Mazza's subjective complaints, pointing out inconsistencies between such complaints and the medical records and, further, finding the medical opinions of record unpersuasive to varying degrees. Filing No. 8-2 at 15–19.

At Step 4, the ALJ found Mazza capable of performing past relevant work as a childcare provider. Filing No. 8-2 at 19–20. The ALJ made an alternative finding at Step 5 that there are jobs existing in significant numbers in the national economy that Mazza can perform. Filing No. 8-2 at 20. Accordingly, the ALJ found Mazza was not disabled and denied her application. Filing No. 8-2 at 21.

## LEGAL STANDARD

The Court reviews a decision denying disability benefits by analyzing whether the ALJ's decision was "supported by substantial evidence in the record as a whole." *Mya Y. v. Saul*, No. 20-CV-1296, 2021 WL 3023691, at *2 (D. Minn. June 28, 2021) (citing 42 U.S.C. § 406(g)) (collecting cases). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (quoting *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). The Court considers evidence that supports and evidence that detracts from the ALJ's decision. *Mulhall v. Colvin*, No. 8:11-CV-411, 2013 WL 959003, at *2 (D. Neb. Mar. 12, 2013). The Court must affirm a denial of benefits if it is "possible to

draw two inconsistent positions from the evidence and one of the positions represents the [ALJ's] findings." *Jones*, 619 F.3d at 968 (quoting citation omitted).

## ANALYSIS

Mazza sets forth the following arguments in support of her request that the Court reverse and remand this matter to the ALJ: (1) the ALJ erred when he rejected the available medical opinion evidence and denied Mazza's claim with a medium exertional level RFC; (2) the ALJ erred when he evaluated the opinions of the agency medical consultants as he improperly evaluated the supportability and consistency of such opinions; and (3) the ALJ made several "harmless" errors which, according to Mazza, "highlight" the ALJ's inattention and failure to develop the record regarding Mazza's cane prescription. In addition, Mazza provided supplemental briefing to the Court which argues the Court should either apply a new regulation regarding past relevant work or remand the claim for determination as to whether the new regulations apply to her case.

As will be set forth herein, Mazza's first argument concerning the ALJ's RFC finding is dispositive. Accordingly, the undersigned does not address Mazza's admittedly "harmless" error arguments,[3] her arguments regarding the applicability of the new regulation for past relevant work,[4] and her supportability and consistency arguments because the ALJ will need to further analyze the RFC in light of the conclusions set forth herein.

---

[3] Mazza sets forth a number of arguments she admits are "harmless" error. Filing No. 15 at 2. The Court need not address these arguments because the conclusions set forth herein recommend a remand in this action. Moreover, if an ALJ's incorrect reasoning constitutes harmless error, the Court should still affirm the ALJ's decision. *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)) ("[R]eversal of an ALJ's decision is not required if an error was harmless, meaning '[t]here is no indication that the ALJ would have decided differently' if the error had not occurred.").

[4] While Mazza's case was pending before the Court, the Commissioner promulgated revised regulations governing the standard the SSA uses to assess a claimant's past relevant work. *See* 20 C.F.R. § 404.1560. Specifically, the updated regulation shortened the lookback period for past relevant work from fifteen years to five years. *See* 89 Fed. Reg. 27653-01, 2024 WL 1665873, at *27653 (Apr. 18, 2024). The ALJ did find Plaintiff was able to perform past relevant work outside of the timeframe pursuant to the new regulation. *Compare* Filing No. 8-2 at 20 (ALJ opinion), *with* Filing No. 8-6 at 40 (Mazza worked as a childcare provider from 1999–2016). However, because the undersigned recommends remand on other grounds, it is unnecessary to make a finding as to whether the regulation applies.

"A claimant's RFC is 'the most' that the claimant can do in a work setting despite [their] limitations." *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)). "The [ALJ] must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [their] limitations." *Id.*

In determining the RFC, an ALJ can draw "reasonable inferences" from the record, *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008), and there is no requirement that an RFC finding "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Nonetheless, some medical evidence must support the determination of the claimant's RFC. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010) (citing *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir. 2001)). An ALJ is not permitted to "play doctor" by "draw[ing] improper inferences from the record" or relying on their "own interpretation of the relevance of ambiguous treatment notes." *Kribble v. Kijakazi*, 663 F. Supp. 3d 1016, 1027 (E.D. Mo. 2023) (quoting *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020)).

Here, the ALJ discredited every medical opinion regarding Mazza's capabilities that he cited in his opinion. *See* Filing No. 8-2 at 18–19 (discrediting the opinions of consultative examiner Dr. Pilley, state agency medical consultants Dr. Wheeler and Dr. Suslow-Geditz, treating provider Dr. Surabhi, physical therapist Derek Learch, and Dr. Bailey). In doing so, the ALJ focused his discussion on inconsistencies between Mazza's subjective complaints and objective evidence in the record.

The undersigned does not necessarily disagree with the ALJ's concerns regarding Mazza's credibility. However, this is not a situation in which Mazza's condition is primarily subjective. There is little dispute regarding Mazza's underlying physical diagnoses, and these diagnoses are based upon objective findings in the record. *See, e.g.*, Filing No. 9-2 at 3 (9/22/20) (nystagmus exhibited in right and left eye); Filing No. 9-1 at 160, 166 (11/04/21) (consultative exam noted prior cervical disc herniation as well as x-ray showing degenerative disc disease, lateral lipping, osteoarthritic changes, inflammatory changes, decreased disc space, and spondylolisthesis); Filing No. 9-1 at 181 (11/30/21) (2013 MRI

13

shows large cervical disc extrusion); Filing No. 9-1 at 230 (12/13/21) (2021 MRI shows central disc protrusion, and multilevel lumbar disc and facet degenerative changes resulting in bilateral neural foraminal stenosis); Filing No. 9-1 at 234, 228 (02/14/22) (abnormal EMG and nerve conduction study, C7 nerve irritation, and possible impingement of the left L5 nerve root); Filing No. 9-2 at 102–03 (11/10/22) (positive for head repetition test and some corrective saccades to each side for head impulse test; noting poor vestibular ocular and spinal reflexes; poor DVA); Filing No. 9-2 at 160 (12/05/2022) (audiogram showing low frequency hearing loss consistent with Meniere's disease).

Nor are the medical opinions the ALJ discounted blindly based upon Mazza's subjective statements. Dr. Wheeler and Dr. Suslow-Geditz both indicated Mazza's statements regarding her symptoms were "partially consistent" with the medical evidence on file and Dr. Pilley found Mazza's exam "questionably reliable." Filing No. 8-3 at 5, 15; Filing No. 9-1 at 165. Like the situation presented in *Linden v. Colvin*, No. 7:15-CV-5005, 2017 WL 1377924, at *3 (D. Neb. Apr. 14, 2017),[5] the finding that Mazza was only partially credible was already "baked into" the medical opinions of Dr. Pilley, Dr. Wheeler, and Dr. Suslow-Geditz.

The undersigned recognizes there are times when Mazza's balance problems were denied or not mentioned, her balance issues improved through vestibular therapy, and her providers do not note gait issues. Nonetheless, the medical records indicate, as early as September 2020, that Mazza was complaining of dizziness and ringing in her ears. *See* Filing No. 9-2 at 2–3 (09/22/20); Filing No. 9-1 at 4 (09/23/20). These records, which occur over a year before Mazza's social security applications, indicate she has Meniere's disease, has known about this diagnosis for five years and, further, that she has experienced ringing in her ears since 2009. Filing No. 9-1 at 4. At these appointments, objective tests were performed which supported Mazza's dizziness complaints. *See* Filing No. 9-2 at 3 (09/22/20) (physical exam showed nystagmus in both eyes); Filing No. 9-1

---

[5]   The undersigned recognizes the Commissioner disregards the *Linden* opinion because it predates a regulation change. However, as pointed out by Mazza, due to the analysis set forth in *Linden*, the fact that it pre-dated 20 C.F.R. § 404.1520c was not a reason to disregard the analysis in *Linden* because *Linden* is not a "good reasons" treating physician rule order. Thus, the regulation change is inconsequential for purposes of the analysis set forth in *Linden*.

at 4 (09/23/20) (oculomotor assessment showed upward torsional right nystagmus during the right Dix Hallpike that lasted more than sixty seconds). Also, though the records show Mazza progressed with physical therapy, objective medical evidence at later appointments still shows evidence of Meniere's disease and, further, that physical therapy was not likely to stop episodes from occurring. Filing No. 9-2 at 114 (11/28/22) (indicating physical therapy likely could not stop episodes from occurring); Filing No. 9-2 at 121 (12/14/22) (noting continued struggles with VOR).

Additionally, although there are records in which Mazza's gait is recorded as normal, it is worthwhile to note that the primary reason for these visits is often unrelated to dizziness, tinnitus, or issues walking. For instance, one record noting Mazza's gait as normal is a pre-operative appointment for an upcoming surgery to remove gall stones. Filing No. 9-1 at 26 (05/14/21). Additionally, at least one of the records noting Mazza's gait as "normal" was a telehealth appointment conducted via Zoom. *See* Filing No. 9-2 at 28 (01/18/22). It is difficult to determine whether Mazza's gait was even assessed under these circumstances.

The larger issue here is not necessarily the ALJ's discrediting the medical opinions of record but the ALJ crafting a new medical limitation without explaining where those limitations came from. The undersigned recognizes that, when evaluating a claimant's RFC, the ALJ is not limited to exclusively considering the medical evidence and, further, that the RFC is ultimately an administrative determination reserved to the Commissioner, even though the decision draws from medical sources for support. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, that determination must be based upon medical evidence that addresses the claimant's ability to function in the workplace. *Stormo v. Barnhart*, 377 F.3rd 801, 807 (8th Cir. 2004). Here, the undersigned is unable to find any medical evidence supporting the ALJ's determination that Mazza can perform medium work, namely, lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.

Accordingly, the ALJ's RFC determination Mazza can perform medium work is not supported by substantial evidence in the record. *Cf. Carter v. O'Malley*, No. 2-23-cv-04112, 2024 WL 4148730, at *2 (W.D. Mo. Sept. 11, 2024) (ALJ erred in formulating RFC

without identifying the medical evidence she relied on after rejecting all medical opinions of record). This error is prejudicial because the ALJ's conclusions at Steps 4 and 5 rely on Mazza being able to perform medium work. The Court should reverse and remand the Commissioner's decision for the ALJ to re-evaluate Mazza's RFC. Upon remand, the Court should instruct the ALJ to develop the record as needed to avoid any further reliance on speculation about her capabilities. *See Scott ex. rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008) (the ALJ has both the authority and the duty to fully develop the record, independent of the claimant's burden of proof).

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** to the Honorable John M. Gerrard, Senior United States District Judge, as follows:

1. Plaintiff Mazza's Motion for Order Reversing the Commissioner's Decision (Filing No. 14) be granted.
2. Defendant Commissioner's Motion for Order Affirming his Decision (Filing No. 19) be denied.
3. The Commissioner's decision be reversed and remanded for further administrative proceedings consistent with the opinion set forth herein.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

Additionally,

**IT IS ORDERED** that Michelle King is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). The Clerk shall modify the docket to reflect this substitution.

16

Dated this 27th day of January, 2025.

BY THE COURT:


*s/ Jacqueline M. DeLuca*

United States Magistrate Judge